UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NICK JOSEPH MOLFETTO,

    Petitioner,

v.                                                                                          CASE NO:  8:11-CV-980-T-30EAJ

SECRETARY, DEPARTMENT OF
CORRECTIONS and ATTORNEY
GENERAL, STATE OF FLORIDA,

    Respondents.
_____/

## ORDER

Petitioner, Nick Joseph Molfetto, an inmate in the Florida penal system, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. #1).  The Court has considered the petition, Respondent's response (Dkt. #7) and Petitioner's reply (Dkt. #11). Upon review, the Court determines that the petition should be denied.

## BACKGROUND

### A.  Factual Background

The factual background of this case is taken from the state's answer brief on Molfetto's direct appeal (Ex. 12), which is consistent with the brief portion of the arresting officer's testimony found on page four of Molfetto's direct appeal  (Ex. 11).

Gary Pruitt, the arresting officer, was working off-duty at Home Depot, stationed outside the store, when he heard the exit theft alarm.  He looked around and saw the store

manager wave him over to where he was standing with Molfetto. Pruitt approached them and asked Molfetto if he could pat him down; Molfetto consented.

Pruitt first searched Molfetto's pockets and then patted down Molfetto's groin area. Pruitt felt a hard, seemingly plastic object which "crunched."

Pruitt advised Molfetto that he was under arrest and put his hands on Molfetto to take him into custody. Pruitt grabbed Molfetto's right hand, but Molfetto tried to take off running. Pruitt then grabbed Molfetto's shirt and yanked him around. Molfetto came up in a defensive position and Pruitt maced him. Pruitt had his police badge on and was using his marked police vehicle.

In spite of being maced, Molfetto pulled away and ran through the parking lot with Pruitt pursuing. As Molfetto ran, Pruitt saw something fall out of his pants and hit the ground. Molfetto jumped into his truck which was occupied by a white female. According to Pruitt, Pruitt knocked on the door and told Molfetto to open the door, but Molfetto did not comply. According to Molfetto, the window was rolled down and Pruitt maced him. A back-up officer arrived and initially stopped the truck, but the truck drove off and ultimately escaped in spite of several marked vehicles chasing it.

Pruitt, thinking that the back-up officer had stopped the truck, went back and picked up the article that fell from Molfetto's pants. The store manager later identified the article as a five amp circuit breaker from Home Depot.

### B. <u>Procedural Background</u>

The procedural background is taken from the state's response to Molfetto's petition before this Court.

A jury found Molfetto guilty of Felony Fleeing to Elude, Petit Theft, Obstructing or Opposing an Officer without Violence, and Escape. He was sentenced by Circuit Judge Dan Perry to five years on the Felony Fleeing to Elude, five years for Petit Theft, time served on the Obstructing or Opposing an Officer without Violence, and forty years as a violent career offender on the Escape charge. Molfetto later successfully had his sentence modified to thirty-years imprisonment by a different circuit judge when it was determined that he should be classified as a habitual felony offender, not a violent career offender.

Molfetto appealed. The conviction and sentence was affirmed without written opinion. *Molfetto v. State*, 845 So. 2d 198 (Fla. 2d DCA 2003).

Molfetto then filed a motion for post-conviction relief. The post-conviction court denied his motion. The appellate court affirmed in part and reversed in part. *Molfetto v. State*, 955 So. 2d 1153 (Fla. 2d DCA 2007). On remand, the post-conviction court was directed to consider two additional claims raised by Molfetto in his amended motions. After an evidentiary hearing, the post-conviction court denied the two remaining claims. Molfetto appealed. The denial was affirmed without written opinion. *Molfetto v. State*, 38 So. 3d 778 (Fla. 2d DCA 2010).

Molfetto also filed *pro se* motions under Florida Rule of Civil Procedure 3.800 attacking his sentence. The trial court denied those motions and Molfetto appealed. The

appellate court affirmed in part and reversed in part. *Molfetto v. State*, 874 So. 2d 668 (Fla. 2d DCA 2004) and *Molfetto v. State*, 922 So. 2d 207 (Fla. 2d DCA 2006) [table]. Molfetto also filed a petition for writ of mandamus which was denied. *Molfetto v. State*, 902 So. 2d 152 (Fla. 2d DCA 2005) [table], a petition for writ of prohibition which was dismissed, *Molfetto v. State*, 875 So. 2d 614 (Fla. 2d DCA 2004) [table], and a petition alleging ineffective assistance of counsel which was denied. *Molfetto v. State*, 887 So. 2d 343 (Fla. 2d DCA 2004) [table].

Molfetto timely filed the instant petition for writ of habeas corpus with this Court asserting the following four grounds for relief:

**Ground One:**     Trial counsel rendered inept and unprofessional representation for failing to investigate the state's intentional suppression of exculpatory witnesses contrary to *Brady v. Maryland*, 373 U.S. 83 (1963).

**Ground Two:**     Trial counsel rendered inept and unprofessional representation for failing to investigate and file a motion to suppress the out-of-court, and subsequent in-court identification of Petitioner based on an unreliable photo pack identification.

**Ground Three:**   Trial counsel rendered inept and unprofessional representation for conceding Petitioner's guilt in opening statement and thereby forcing him to testify and negating a valid identity defense.

**Ground Four:**    Trial counsel rendered inept and unprofessional representation for failing to object to the trial court's participation in negotiations which resulted in a vindictive sentence after trial.

## STANDARD OF REVIEW

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), effective as of April 24, 1996, "a district court shall

entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States." 28 U.S.C. § 2254(a). The Supreme Court has cautioned that § 2254 does not make federal courts "forums in which to relitigate state trials." *Barefoot v. Estelle*, 463 U.S. 880, 887, 103 S. Ct. 3383, 77 L.Ed.2d 1090 (1983).

Where a state court initially considers the issues raised in the petition and enters a decision on the merits, Section 2254(d) governs the review of those claims. *See Penry v. Johnson*, 532 U.S. 782, 792, 121 S. Ct. 1910, 150 L.Ed.2d 9 (2001). A federal court may grant a § 2254 petition only if (1) the state decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) the state decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). *See Price v. Vincent,* 538 U.S. 634, 638, 123 S. Ct. 1848, 155 L.Ed.2d 877 (2003); *Maharaj v. Sec'y for the Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).

The Eleventh Circuit Court of Appeals discussed the meaning of the "contrary to" and "unreasonable application" clauses in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

Section 2254 establishes a highly deferential standard for reviewing state court judgments. *Parker v. Sec'y for the Dep't of Corr.*, 331 F.3d 764, 768 (11th Cir. 2003). If a federal court concludes that a state court applied federal law incorrectly, it may grant habeas relief only if that application was "objectively unreasonable." *Id. See also Yarborough v. Gentry*, 540 U.S. 1, 124 S. Ct. 1, 4, 157 L.Ed.2d 1 (2003). Moreover, under Section 2254(e)(1), a state court's factual findings shall be presumed correct, and the habeas petitioner can rebut the presumption of correctness only by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052. *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient

showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id*. at 690.

Petitioner must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691-92. To meet this burden, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

## DISCUSSION

**Ground One:**   Trial counsel rendered inept and unprofessional representation for failing to investigate the state's intentional suppression of exculpatory witnesses contrary to *Brady v. Maryland*, 373 U.S. 83 (1963).

Prior to trial, it was well known that several officers were involved in the pursuit of Molfetto. Defense counsel took the deposition of two of the officers, Officers Pruitt and Owens, but did not seek the identity of the others involved in the chase. Molfetto contends:

> The identity of those officers was never revealed and counsel never filed a motion based on a *Brady* violation. Prior to trial, counsel knew about the existence of these other police officers at the scene based on the testimony at the hearing on counsel's motion to sever, and the depositions of Officer Owens and Officer Pruitt. Despite counsel's knowledge, she failed to do any investigation to discover the identity of these officers and to determine whether these officers would provide exculpatory testimony to corroborate the Defendant's identity defense. Only one person (Officer Pruitt) at the scene could identify the Petitioner as the suspect, and his testimony was unreliable.

Petition (Dkt. #1), p. 6.

The fatal flaw in this ground is that it assumes the testimony from the unidentified officers would have been favorable to Molfetto. But these officers still have not been identified, their testimony has not been established, and Molfetto does not demonstrate how their testimony would have helped, much less change the outcome of the trial. To prevail on an ineffective assistance of counsel claim, it is required that a habeas petitioner demonstrate prejudice. That is, a petitioner must show how the specific testimony of an uncalled witness would have been favorable and changed the outcome of the trial. *Boyd v. Estelle*, 661 F. 2d 388, 390 (5th Cir. 1981); *see also Gomez v. McKaskle*, 734 F. 2d 1107, 1109-10 (5th Cir. 1984), *cert. denied*, 469 U.S. 1041 (1984) (petitioner failed to meet his burden of showing that uncalled witnesses would have testified favorably to the petitioner's case). Because Molfetto fails to establish prejudice, ground one fails.

**Ground Two:**    Trial counsel rendered inept and unprofessional representation for failing to investigate and file a motion to suppress the out-of-court, and subsequent in-court identification of Petitioner based on an unreliable photo pack identification.

Someone (Molfetto does not say who) apparently identified a photograph of Molfetto from a photo pack. Molfetto complains that almost two years after the filing of the information against him and only two months prior to trial, the state produced the photo pack used in the identification. Molfetto faults his trial counsel for failing to move to suppress the identification from the photo pack and at trial because of what he contends was a "discovery violation."

The post-conviction court denied this claim for several reasons. First, a motion to suppress is not the proper remedy for a discovery violation. If the defense wanted the evidence sooner, it could have filed a motion to compel. Second, before evidence will be suppressed, a party must show that the violation prejudiced his ability to prepare for trial. The post-conviction court pointed out that Molfetto admitted that his counsel had the photo pack at least seven weeks prior to trial and was therefore unable to demonstrate prejudice. Third, the post-conviction court ruled Molfetto was not prejudiced because he admitted at trial that Pruitt patted him down, sprayed him with mace, and he ran to a vehicle and fled. The post-conviction court concluded that, even had defense counsel been successful in preventing the state from admitting any testimony regarding the photo identification, Molfetto could not claim prejudice because he admitted that he was the individual that fled.

Molfetto contends that the post-conviction court's reasoning is circular:

> To say that counsel's failure to move to suppress the photo pack was not prejudicial because he later testified admitting his identity is akin to bootstrapping evidence because Petitioner's decision whether or not to testify was based on the evidence in the state's case. Where, often, there is other evidence of guilt from the state, which would support a finding of no

> prejudice, such is not the case here because the testimony of the Petitioner was not mandatory and was not under the control of the state. There was only one witness who provided a sketchy identification in a photo pack. If the photo pack had been suppressed, then Petitioner could have chosen not to testify and the identification issue would have been non-existent. As it was, Petitioner had to testify to explain the state's evidence. Accordingly, the ineptitude of counsel did prejudice the Petitioner and the trial court made an unreasonable, arbitrary application of the law.

Reply (Dkt. #11), p. 5.

This ground fails because it is based on many assumptions, none of which are proven. First, Molfetto describes the photo pack, in conclusory fashion, as "unreliable" and "suggestive." But Molfetto offers no specifics - - he does not state how the photo pack is suggestive, how it influenced the identification, or even who made the identification. Vague, conclusory descriptions will not support a habeas claim. *Ross v. Estelle*, 694 F. 2d 1008, 1012 (5th Cir. 1983).

Second, ground two assumes, had defense counsel filed a motion to suppress, it would have been successful and the photo identification would have been suppressed. If the trial court had concluded that it was, in fact, a discovery violation, it then would have had to determine whether the defense was prejudiced in preparing for trial. The defense would have been hard pressed to explain how seven weeks was insufficient time to prepare once the defense had possession of the photo pack. In fact, Molfetto does not assert that there was insufficient time to prepare for trial. And had Molfetto cleared that hurdle, Molfetto does not explain why suppression of the evidence would have been the remedy. For example, the trial

court could have granted a continuance of the trial. In sum, it is mere speculation that the photo identification would have been suppressed.

Third, ground two assumes that, had a motion to suppress the photo pack been successful, the trial court would have suppressed not only the out-of-court photo identification, but also the in-court identification. Molfetto does not contend that the photo pack somehow tainted Pruitt's identification of him at trial. Pruitt had a good view of Molfetto in the Home Depot parking lot and identified him as the person he placed under arrest.

Fourth, ground two assumes, had the photo pack been suppressed, the outcome of the trial would have been different because Molfetto's own personal preferred defense, the identification defense, would have succeeded. Molfetto's identification defense strategy was to take the stand and deny that he was the one that was arrested. But Molfetto admitted at his first evidentiary hearing on his post-conviction motion that he had a problem with that defense because he had already admitted to his counsel that he was present at the scene and fled:

> Q. Did you have in your mind an identification defense that could have been used in your trial?
>
> A. Yes, I did, sir.
>
> Q. Did you understand that the State would have a problem proving beyond a reasonable doubt that your body was in the - - behind the steering column of the vehicle during the police chase upon which the trial took place?
>
> A. Yes, sir.

Q. That they would have a problem proving that?

A. Yes, sir, they would have a problem proving that.

Q. Now the agreed upon facts in this case by both parties, the State of Florida and you, is that the actual vehicle got away so to speak on the day of the police chase, is that right?

A. That's correct, sir.

Q. And your body was arrested for having escaped in that vehicle about how long after the incident of the escape?

A. Approximately a month and a half later.

Q. So your body was never taken into custody as the bad guy who escaped until a month and a half after the incident?

A. That's correct, sir.

Q. And the vehicle that's alleged to have been the one that you used to escape in, was it registered to your name?

A. No, it was not, sir.

Q. Do you know who's name it was registered to?

A. It was registered under my mother's name.

Q. Did Ms. McGucken review with you your option under the constitution to remain silent in trial and not have it used against you?

A. No, she didn't.

Q. Tell the Court what your understanding was in terms of your right to testify or remain silent.

A. Ms. McGucken, when she came to the jail to see me she told me that - - I explained to her that I wanted to pursue this identity defense. She explained to me that - - we discussed it at length. That I couldn't do

>   that and if I changed my mind and got up on the stand and revealed any of that that she would withdraw as counsel and testify in rebuttal against me.
>
>   She also, um, told me that that wouldn't we (sic) a good idea to do something like that because me and her had already discussed that. I was present in the vehicle.
>
> Q. So your understanding was that she found it a distasteful defense and refused to employ such an identity defense in that her understanding was that you had made admissions to being in the vehicle?
>
> A. Exactly, sir.

Respondent's Ex. 17, pp. 1011-13.

Molfetto's fall back position now is that, rather than taking the stand, he would have remained silent in the hopes that the state would be unable to prove his identity. But, he did not take the stand until after the state had already proven his identity through the testimony of Pruitt. Molfetto does not explain, much less demonstrate, how his silence would have overcome Pruitt's testimony.

For the foregoing reasons, ground two fails.

**Ground Three:** Trial counsel rendered inept and unprofessional representation for conceding Petitioner's guilt in opening statement and thereby forcing him to testify and negating a valid identity defense.

In support of ground three, Molfetto contends:

> (C)ounsel had conceded his guilt during opening statements by stating that he had been present at the scene, he had consented to a pat down, the officer found an object in his groin area, and that he had ran (sic) from the officer because he was scared. Prior to trial, the Petitioner informed counsel that he had an identification defense, and that defense was negated when counsel admitted that the Petitioner was in the vehicle and had escaped.

Petition (Dkt. #1), p. 9.

The Court notes that Molfetto's trial counsel did not make her opening statement until after the state had presented its case and rested. It was only after Attorney McGucken and Molfetto were able to evaluate the strength of the state's case that she acknowledged Molfetto's presence at the scene. The state post-conviction court made a finding of fact that she discussed this trial strategy with Molfetto and he agreed. This Court is bound by that finding of fact unless Molfetto overcomes it by pointing to clear and convincing evidence in the record. In that, he has failed.

> In denying this claim, the post-conviction court said:
>
> In the evidentiary hearing on September 6 and 7, 2005, Defendant testified that his attorney admitted guilt during her opening statement without his consent. His attorney testified, however, that she discussed the content of her opening statement with her client prior to giving it. Unfortunately, this debate cannot be resolved through an examination of the record as the opening statements were not transcribed. Thus, the Court must weigh the contrasting testimony and make a factual determination as to the content of opening statements. The Defendant, on direct examination by his post-conviction counsel, Mr. Chalela, testified as follows:
>
> CHALELA: Do you remember, as a witness today do you remember Ms. McGucken admitting that you were guilty of theft and escape in her opening statement?
>
> DEFENDANT: Yes, I did.
>
> CHALELA: How did that make you feel when your attorney was admitting that you were guilty of escape and theft in opening statement?
>
> DEFENDANT: It didn't make me feel too good. I was — I wanted to stop the trial right there.
>
> CHALELA: Why is that?

DEFENDANT: Because I didn't agree to any of that.

CHALELA: Okay. Did she never discuss with you that she would be admitting guilt in opening statements?

DEFENDANT: Never. Never.

CHALELA: At any time during the trial did she get your permission before admitting your guilt in any way during the trial?

DEFENDANT: No, she did not.

On cross-examination by the State, Ms. McGucken testified as follows:

STATE: And let's talk about in opening statement. Do you have notes in your file that refer to and contain what your opening statement was to the jury?

McGUCKEN: Well, yes, pretty much.

STATE: And in fact did you comply with those notes and representations in your statement to the jury?

McGUCKEN: Yes.

STATE: And at any point in time did you concede guilt on any of the these particular crimes of [Defendant]?

McGUCKEN: I don't think so.

STATE: And in fact everything you told the jury in opening statement, was that agreed to by [Defendant] in your discussions with him?

McGUCKEN: Absolutely.

STATE: And in fact did you reserve your opening statement and wait for the State to put on all the evidence and actually rest before making your statement to the jury as a strategic decision?

McGUCKEN: Yes.

> The Court finds Ms. McGucken's testimony, as to conceding guilt during her opening statement, to be credible. *See Smith v. State,* 697 So. 2d 991, 992 (Fla. 4th DCA 1997). The Court finds further that counsel reserved her opening statement until the State rested as a strategic decision. "Counsel's strategic decisions will not be second-guessed on collateral attack." *Johnson v. State*, 769 So. 2d 990, 1001 (Fla. 2000). Consequently, Defendant fails to meet the first prong of Strickland by failing to demonstrate deficient performance. As such, no relief is warranted on ground 11 of Defendant's Motion.

Order Denying Post-Conviction Relief, Ex. 17, pp. 11-13, record citations omitted.

The defense, at trial, hoped that by admitting certain things it would strengthen Molfetto's defense to the fleeing and eluding charge. The argument was that, while Pruitt testified that Molfetto got into the truck on the driver's side and drove off, Molfetto could not drive because he had been maced. It was the white female inside the truck that switched places and drove the truck. Defense counsel's testimony at the first evidentiary hearing on Molfetto's post-conviction motion was:

> QUESTION (prosecutor):   And do you remember whether it was Officer Pruitt that admitted and testified that he maced the defendant and that the defendant then got on the driver's side of the vehicle?
>
> ANSWER  (Molfetto's trial counsel):   Yes, I mean that was - - yes, because our argument was that my client switched over with the woman and she drove the car.
>
> QUESTION:   During the actual escape progress?
>
> ANSWER:   Yes.
>
> QUESTION:  And did you make an argument during trial that because he was just maced by Officer Pruitt that he would have had to have switched places in that he would not have been able to drive?

>    ANSWER: I think that was our argument.  He'd been maced in the face and I didn't know how he - - he wasn't - - how was he going to drive, so he switched places.

Transcript of Evidentiary Hearing, Respondent's Ex. 17, pp. 1079-80.

Counsel had sound strategic reasons for acknowledging Molfetto was at the scene, but did not drive the truck in an effort to flee.  This Court accepts the factual findings of the post-conviction court and concludes that ground three is without merit.

**Ground Four:**   Trial counsel rendered inept and unprofessional representation for failing to object to the trial court's participation in negotiations which resulted in a vindictive sentence after trial.

In support of ground four, Molfetto argues:

> (D)uring a pre-trial hearing appearance, Judge Daniel Perry asked the State what the plea offer was on the case, and when the State informed the court that the offer was fifteen years, Judge Perry attempted to convince the Petitioner to accept the offer by warning him about the potential consequences of a guilty verdict, stating, "Mr. Molfetto if you go to trial in my courtroom and you are found guilty I am going to give you 40 to 60 years."  Subsequently, he was found guilty at trial and the Petitioner asserts that Judge Perry acted vindictively in sentencing him to 40 years as a violent career criminal.  After Petitioner filed a well taken Motion to Correct Illegal Sentence, he was re-sentenced to the maximum of 30 years as a habitual felony offender.

Petition (Dkt. #1), p. 11.

Federal law places the burden on a habeas petitioner to show a reasonable likelihood of vindictiveness, not merely point to a high sentence.  *Alabama v. Smith*, 490 U.S. 794 (1989).  In the petition, Molfetto sets forth no federal cases showing how this statement by Judge Perry rises to the level of a violation of the U. S. Constitution.  In his reply, Molfetto does not even argue this ground.

And the 40-year sentence from Judge Perry was rendered moot when a different judge subsequently sentenced Molfetto to 30 years as an habitual felony offender. Therefore, his argument concerning the sentence imposed by Judge Perry is both moot and unsupported in the record.

## CONCLUSION

All four grounds raised by Molfetto fail for lack of merit.

It is therefore ORDERED AND ADJUDGED that:

1. The petition for writ of habeas corpus (Dkt. #1) is DENIED.

2. The Clerk is directed to enter judgment in favor of Respondents and against the Petitioner, terminate any pending motions, and close this file.

### CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484

(2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE** and **ORDERED** in Tampa, Florida on April 5, 2012.

[Signature: James S. Moody, Jr.]

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies Furnished To**:
Counsel/Parties of Record

*F:\Docs\2011\11-cv-980.deny 2254 Molfetto.wpd*